USDC- BALTIMORE
'26 SEP 25 PM2:19

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

MELISSA N. LIVERPOOL,

Plaintiff,

v.

AMERICAN EXPRESS NATIONAL BANK,

Defendant.

CIVIL ACTION SAG 26-CV-3805

COMPLAINT AND DEMAND FOR JURY TRIAL

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Melissa N. Liverpool, proceeding without counsel, brings this action against Defendant American Express National Bank and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises under the Fair Credit Reporting Act, 15 U.S.C. section 1681 et seq., and concerns Defendant's duties as a furnisher of information under 15 U.S.C. section 1681s-2(b).

2. Plaintiff alleges that Defendant furnished inaccurate, internally inconsistent, and materially incomplete information concerning an American Express account identified in consumer reports by a masked account number beginning 349991.

3. Plaintiff disputed the specific inaccuracies and omissions through Experian's online dispute system. Experian processed the dispute and issued a result dated April 29, 2026, bearing Report Number 0847-7637-22.

4. Experian labeled the result Verified and Updated and stated that the information Plaintiff disputed had been verified as accurate, while information unrelated to Plaintiff's dispute had been updated.

HD
Rcv'd by: AR

5. A later three-bureau report dated September 6, 2026 continued to display the same disputed Experian information. It also displayed mutually inconsistent information furnished under the American Express name to the other nationwide consumer reporting agencies.

6. Plaintiff alleges that Defendant's response to Experian was not a reasonable investigation. Plaintiff alleges that it was a sham verification because it left the specifically disputed inaccuracies and omissions unresolved, even though Defendant's own account records could objectively establish the correct dates, amounts, account terms, credit limit, and payment history.

7. Plaintiff seeks relief for Defendant's negligent noncompliance and, in the alternative, its willful or reckless noncompliance with 15 U.S.C. section 1681s-2(b).

## II. PARTIES

8. Plaintiff Melissa N. Liverpool is a natural person and consumer within the meaning of 15 U.S.C. section 1681a(c). Plaintiff resides at 2614 Smooth Alder Street N, Gambrills, Maryland 21054-4490, in Anne Arundel County.

9. Defendant American Express National Bank is a national bank identified by the Office of the Comptroller of the Currency as Charter Number 25151, with its main office at 115 West Towne Ridge Parkway, Sandy, Utah 84070.

10. On information and belief, Defendant issued, owned, serviced, or maintained the account identified in Plaintiff's reports under the American Express and AMEX names and regularly furnished information about that account to Experian Information Solutions, Inc. and other nationwide consumer reporting agencies.

11. Defendant acted as a furnisher of information within the meaning and operation of 15 U.S.C. section 1681s-2 when it transmitted information about Plaintiff and responded to the dispute forwarded by Experian.

## III. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. section 1331 because the claim arises under federal law and under 15 U.S.C. section 1681p because Plaintiff seeks to enforce liability created by the Fair Credit Reporting Act.

13. The amount in controversy does not limit this Court's FCRA jurisdiction. 15 U.S.C. section 1681p.

14. This Court has personal jurisdiction over Defendant because Defendant purposefully furnished consumer-credit information concerning a Maryland resident for use in Maryland and responded to a dispute concerning the accuracy and completeness of that information, with the alleged effects sustained in Maryland.

15. Venue is proper under 28 U.S.C. section 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this District. Plaintiff received and reviewed the reporting in Maryland, submitted the dispute from Maryland, received the result in Maryland, and experienced the alleged credit injury in Maryland.

16. Assignment to the Northern Division is appropriate because Plaintiff resides in Anne Arundel County. District of Maryland Local Rule 501 requires the caption to identify the county of residence of Maryland parties and assigns Anne Arundel County matters to the Northern Division.

## IV. FACTUAL ALLEGATIONS

### A. The American Express Tradeline

17. The September 6, 2026 three-bureau report bears Report Number M75580425 and identifies Plaintiff as Melissa N. Liverpool.

18. The report presents an AMEX tradeline in the Experian column with a masked account number beginning 349991.

19. Experian reports the account as a revolving credit-card account opened on September 8, 2010, closed, and charged off.

20. Experian reports a balance of $36,546, high credit of $36,546, and a past-due amount of $18,863.

21. Experian leaves the credit-limit field blank while reporting a balance and high-credit amount of $36,546.

22. Experian describes the account terms as 1 Month, even though it classifies the account as revolving and as a credit card.

23. Experian leaves the monthly-payment field blank and leaves the date-of-last-payment field blank.

24. Experian reports the payment status as Charge-off, the account status as Closed, the last-reported date as August 27, 2026, and the date last active as April 1, 2025.

25. Experian's monthly history reports September 2024 and October 2024 as current, November 2024 as 30 days late, December 2024 as 60 days late, January 2025 as 90 days late, and February and March 2025 as 120 days late.

26. Experian then leaves every monthly-history field from April 2025 through August 2026 blank, despite reporting a current Charge-off status and an August 27, 2026 last-reported date.

27. The Experian presentation does not disclose a charge-off date, charge-off amount, date closed, date of first delinquency, or date of last payment.

28. The Experian presentation does not explain how the $18,863 past-due amount relates to the reported $36,546 balance, what portion of the balance was charged off, or whether any post-charge-off payment, credit, adjustment, or collection activity occurred.

29. Experian includes the comment Account information disputed by consumer under the Fair Credit Reporting Act.

**B. Objectively Verifiable Conflicts and Incompleteness**

30. The same September 6, 2026 report presents a separate AMERICAN EXPRESS partition in the Equifax column and an AMEX partition in the TransUnion and Experian columns.

31. The partitions share the same September 8, 2010 opening date, $36,546 balance, $18,863 past-due amount, August 27, 2026 last-reported date, charge-off status, American Express telephone number, and similar masked account numbers.

32. Those matching identifiers support the reasonable inference that the three bureau presentations concern the same underlying American Express account.

33. The report nevertheless gives materially different dates last active for that account. Experian reports April 1, 2025, while Equifax and TransUnion report August 27, 2026.

34. The April 1, 2025 and August 27, 2026 dates cannot both identify the same last account activity. August 27, 2026 also exactly matches the last-reported date, supporting an inference that an update date may have been furnished or displayed as an activity date.

35. The correct date and the event that each date represents are objectively and readily verifiable from Defendant's account ledger, payment records, charge-off records, collection records, and furnishing history.

36. The monthly payment histories are also materially inconsistent. Equifax displays the account as charged off for each month from April 2025 through July 2026. Experian leaves those same months blank. TransUnion supplies no monthly history for the account.

37. The report therefore presents a continuing monthly charge-off history to one bureau, no corresponding post-March 2025 monthly history to another, and no monthly history to

the third, even though each bureau presentation identifies the same balance, past-due amount, last-reported date, and charge-off status.

38. The report presents materially different credit-limit information. TransUnion reports a zero-dollar limit. Experian and Equifax leave the credit-limit field blank. TransUnion and Experian report high credit of $36,546, while Equifax leaves high credit blank.

39. A zero or undisclosed credit limit combined with a $36,546 balance is materially misleading unless it accurately reflects the account type and Defendant supplies sufficient information to prevent the balance from being understood as an amount charged against no available limit.

40. The report also classifies the account differently. Experian describes it as revolving and a credit card. Equifax and TransUnion describe it as an Open Account while separately reporting its status as Closed.

41. Plaintiff does not rely merely on the wording Open Account as proof that the status was open. Plaintiff alleges that the inconsistent classification, when combined with the missing limit, incomplete history, and closed charge-off status, failed to communicate the account's nature completely and without material ambiguity.

42. All three bureau presentations omit the date of last payment. The report also omits the date of first delinquency, charge-off date, and charge-off amount from the displayed account information.

43. Each challenged value or omission concerns an objective account fact capable of determination through records maintained or accessible to the entity that issued, serviced, charged off, and furnished the account.

**C. Plaintiff's Experian Dispute**

44. Before Experian issued its April 29, 2026 result, Plaintiff submitted an online dispute through Experian.com concerning the AMEX account beginning 349991.

45. Plaintiff specifically disputed the inconsistent date-last-active reporting, the missing credit limit, the missing date of last payment, the missing charge-off date and charge-off amount, the missing date of first delinquency, the unexplained difference between the balance and past-due amount, the account-type and terms presentation, and the incomplete monthly payment history.

46. Plaintiff's dispute identified concrete fields and did not merely state that the account was not hers or that she disagreed with a valid debt.

47. The dispute gave Experian and Defendant enough information to identify the account and compare the reported fields against account-level records.

48. Experian processed the dispute and issued an online result dated April 29, 2026, bearing Report Number 0847-7637-22.

49. The result identifies AMEX and a masked account number beginning 349991 and labels the disposition Verified and Updated.

50. Experian stated that the information Plaintiff disputed had been verified as accurate, while information unrelated to Plaintiff's dispute had been updated.

51. The result did not state that Plaintiff's dispute was frivolous or irrelevant.

52. Under 15 U.S.C. section 1681i(a)(2), Experian was required to notify the person that furnished the disputed item and to provide the relevant dispute information. The completed verification and AMEX-specific result support the reasonable inference that Experian transmitted Plaintiff's dispute to Defendant.

53. On information and belief, Experian notified Defendant of the dispute pursuant to 15 U.S.C. section 1681i(a)(2), and Defendant received the dispute information before the April 29, 2026 result.

54. That notice triggered Defendant's duties under 15 U.S.C. section 1681s-2(b).

**D. Defendant's Sham and Unreasonable Investigation**

55. After receiving Experian's notice, Defendant was required to investigate the disputed information, review all relevant information supplied by Experian, report the results to Experian, and correct, delete, or block any disputed information found inaccurate, incomplete, or unverifiable.

56. The Fourth Circuit holds that section 1681s-2(b) requires a furnisher to conduct a reasonable investigation of its records to determine whether the disputed information can be verified. Johnson v. MBNA America Bank, N.A., 357 F.3d 426, 430 to 431 (4th Cir. 2004).

57. The Fourth Circuit has also held that a plaintiff must allege an actual inaccuracy or incompleteness that is objectively and readily verifiable by the furnisher. Roberts v. Carter-Young, Inc., 131 F.4th 241, 252 to 253 (4th Cir. 2025).

58. Plaintiff's dispute met that standard because Defendant's own records could identify the actual date of last activity, last payment date, credit limit or applicable spending-limit treatment, monthly payment sequence, date of first delinquency, date and amount of charge-off, date closed, and calculation of the balance and past-due amount.

59. A reasonable investigation required more than comparing the dispute to the same electronic fields that generated the disputed reporting and returning those fields as verified.

60. A reasonable investigation required Defendant to reconcile the facial conflict between April 1, 2025 and August 27, 2026 as the reported date last active.

61. A reasonable investigation required Defendant to determine why it was furnishing monthly charge-off indicators to Equifax for April 2025 through July 2026 while the corresponding Experian monthly fields remained blank.

62. A reasonable investigation required Defendant to determine and communicate whether the account had a fixed credit limit, no preset spending limit, or another limit structure, rather than allowing a zero limit at one bureau and blank limits at the others to remain alongside a $36,546 balance.

63. A reasonable investigation required Defendant to verify the chronology of delinquency and charge-off using the account ledger and historical statements, not merely the current balance and status code.

64. A reasonable investigation required Defendant to determine whether the term 1 Month completely and accurately described the reported revolving credit-card obligation.

65. A reasonable investigation required Defendant to provide a coherent result or report that the disputed information could not be verified if records sufficient to resolve the disputed fields were unavailable.

66. Defendant instead verified or approved the continued reporting of the tradeline without resolving the specifically disputed fields.

67. The September 6, 2026 report continues to display Experian's April 1, 2025 date last active, blank credit limit, blank date of last payment, blank post-March 2025 monthly history, 1 Month terms, $36,546 balance, $18,863 past-due amount, and Charge-off status.

68. The later report therefore supports the inference that the specific information Plaintiff challenged was not corrected or completed after Defendant's response.

69. Plaintiff alleges that the verification was a sham because the result used the label verified without resolving readily verifiable contradictions, omitted fields, and chronology problems identified in the dispute.

70. Plaintiff alleges on information and belief that Defendant mechanically confirmed existing coded data, failed to examine sufficient account-level records, failed to reconcile its furnishing across bureaus, or otherwise used a procedure incapable of resolving the precise dispute presented.

71. The persistence of every material disputed field after the verification, together with mutually exclusive activity dates and inconsistent monthly histories, supports a plausible inference that Defendant's investigation was superficial and unreasonable.

72. If Defendant lacked records sufficient to establish the correct information, section 1681s-2(b)(1)(E) required it, as appropriate, to modify, delete, or permanently block information that could not be verified after reinvestigation.

73. Defendant did not cause the disputed information to be reported in a complete, coherent, and nonmisleading manner after receiving notice through Experian.

**E. Publication and Resulting Harm**

74. On September 6, 2026, after completion of the dispute process, Plaintiff obtained the three-bureau report bearing Report Number M75580425 and confirmed that Experian continued to report the disputed AMEX information.

75. On September 6, 2026, Plaintiff applied to Discover for consumer credit and Discover denied the application.

76. On information and belief, Discover obtained and considered consumer-report information concerning Plaintiff in connection with the application, and the derogatory AMEX charge-off information was available in Plaintiff's Experian file at that time.

77. The AMEX tradeline communicated a closed charge-off account with a $36,546 balance, an $18,863 past-due amount, and a serious delinquency history, information bearing directly on creditworthiness and the decision whether to extend credit.

78. Plaintiff alleges on information and belief that the continued AMEX reporting was communicated or considered in connection with the Discover application and contributed to the denial.

79. The denial deprived Plaintiff of the credit opportunity for which she applied and constitutes actual harm attributable to the continued post-dispute reporting, subject to confirmation through Discover's adverse-action notice and discovery.

80. Plaintiff seeks the actual damages proven to have resulted from Defendant's failure to comply, together with the statutory remedies available for willful noncompliance.

## V. COUNT I
## NEGLIGENT VIOLATION OF 15 U.S.C. SECTION 1681s-2(b)

81. Plaintiff incorporates paragraphs 1 through 80 as if fully stated here.

82. Defendant furnished information concerning Plaintiff's American Express account to Experian.

83. Experian received Plaintiff's detailed dispute and, on information and belief, notified Defendant pursuant to 15 U.S.C. section 1681i(a)(2).

84. The information Defendant furnished was inaccurate or materially incomplete because it included or produced mutually exclusive activity dates, omitted readily verifiable payment and charge-off information, supplied an incomplete post-March 2025 monthly history, and failed to communicate the account's limit and terms in a coherent manner.

85. The challenged information was objectively and readily verifiable from Defendant's own account and furnishing records.

86. Defendant negligently failed to conduct a reasonable investigation, review all relevant dispute information, report a complete and accurate result, and modify, delete, or block information that was inaccurate, incomplete, or unverifiable.

87. Defendant's unreasonable investigation caused the disputed derogatory information to remain in Plaintiff's Experian file after the reinvestigation.

88. As a direct and proximate result, Plaintiff sustained actual damages, including the alleged loss of the Discover credit opportunity, in an amount to be established through evidence.

89. Defendant is liable under 15 U.S.C. section 1681o for actual damages, costs, and any other relief authorized by law.

## VI. COUNT II
## WILLFUL VIOLATION OF 15 U.S.C. SECTION 1681s-2(b)

90. Plaintiff incorporates paragraphs 1 through 89 as if fully stated here.

91. Plaintiff pleaded this count in the alternative to Count I.

92. Defendant received notice identifying specific and objectively verifiable inaccuracies and omissions concerning an account for which Defendant possessed or controlled the underlying records.

93. Despite that notice, Defendant verified or approved continued reporting without resolving the conflicting activity dates, missing limit information, incomplete payment history, missing last-payment date, and missing charge-off chronology.

94. The facial nature and number of the unresolved defects, combined with Defendant's ability to consult its own records, support an inference that Defendant knowingly disregarded or recklessly failed to perform its statutory duties.

95. Defendant's conduct was more than a reasonable mistake because the investigation result confirmed accuracy while the later report continued to display the precise defects identified in Plaintiff's dispute.

96. Plaintiff alleges that Defendant willfully or recklessly failed to conduct the reasonable investigation required by 15 U.S.C. section 1681s-2(b).

97. Under 15 U.S.C. section 1681n, Plaintiff seeks actual or statutory damages as permitted, punitive damages as the Court may allow, costs, and any other authorized relief.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award:

A. Actual damages proven under 15 U.S.C. sections 1681n and 1681o;

B. Statutory damages for willful noncompliance under 15 U.S.C. section 1681n;

C. Punitive damages in an amount the Court permits under 15 U.S.C. section 1681n;

D. Costs of the action and reasonable attorney's fees if recoverable and incurred;

E. Prejudgment and postjudgment interest to the extent authorized by law; and

F. Any other relief the Court deems just and authorized by law.

## VIII. JURY DEMAND

98. Plaintiff demands a trial by jury on every issue so triable.

Respectfully submitted,

/s/ ~~Melissa N. Liverpool~~
Melissa N. Liverpool, Pro Se
~~2614 Smooth Alder Street N~~ P.O. Box 3444
Gambrills, Maryland ~~21054-4490~~ 21114
melissa.liverpool@gmail.com